**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| CIERRA ROUSSEAU-DOBARD, ET AL. | CIVIL ACTION |
| Plaintiffs | NO. 2:23-cv-01433 |
| *versus* | JUDGE BARRY W. ASHE |
| MOF-PRESERVATION OF AFFORDABILITY CORP., ET AL. | MAG. JUDGE DONNA PHILLIPS CURRAULT |
| Defendants | |

**JOINT MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES ONLY, PRELIMINARY APPROVAL OF SETTLEMENT APPOINTMENT OF CLAIMS ADMINISTRATOR, APPROVAL OF THE FORM AND MANNER OF THE COMBINED CLASS CERTIFICATION OPT-OUT AND SETTLEMENT NOTICE, APPROVAL OF PROOF OF CLAIM FORM AND PRELIMINARY SCHEDULE, AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**

Plaintiffs, Cierra Rousseau-Dobard, Michael Dobard, individually and on behalf of their minor children, Brittany Harris, Nicole Jones, Chelsi Nora, individually and on behalf of her minor child, Beverly Williams, Adrianna Jackson, Amy Toledano, Erica Toledano, Elise Felix, Gladys Dedrick, individually and on behalf of her deceased sister, Kimberly Delay, Jasmine Randall, Marvette Johnson, Leotis Johnson, Tashane Gordon, Tierra Slack, Winifred Boyd, Brittany Williams ("Plaintiffs"), on behalf of themselves and those similarly situated**,** and Defendants, MOF-Preservation of Affordability Corp., MOF-Willows, LLC, Pac Housing Group, LLC, and GMF-Parc Fontaine, LLC ("MOF-Defendants"), (collectively, "Defendants"), who represent that the Parties to this matter have reached a contingent Settlement agreement and, in furtherance of the said Settlement, move this Court to grant this "Motion for Approval" to include the following particulars:

1.

Certify the proposed Class for settlement purposes only, pursuant to Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3). The parties stipulate to the certification of this proposed class for settlement purposes only, pursuant to Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3).

2.

Preliminarily approve the settlement between the Parties as reflected in the Confidential Stay Agreement dated December 17, 2024 attached hereto as **Exhibit A)** and Settlement Communication dated August 12, 2025  **(**attached hereto as **Exhibit B**) as fair, reasonable and adequate, entered into in good faith and without collusion, and within the range for possible judicial approval and that the Court direct that the Agreement and the Settlement set forth therein be submitted to the Class for consideration at a fairness hearing upon the Parties filing a Motion for Final Approval of Settlement.

3.

Find that the proposed distribution of Settlement Proceeds at a progressive amounts based upon connections with the property and worsening property conditions over time as follows is fair and reasonable.

4.

Appoint Jacob Young of  Herman & Young at 1100 Poydras St., Suite 1200 New Orleans, La. 70163, to serve as Claims Administrator with the authority to (i) administer the notice plan approved herein; (ii) devise a plan for establishing appropriate reserves to be deducted from the Settlement Payment in order to establish the amount available from the Settlement Payment for distribution to Class Members; (iii) establish appropriate criteria for evaluation of Claims of Class Members; (iv)review and evaluate the Claims of Class Members in accordance with the criteria so established; (v) establish proposed allocations for each Class Member in accordance with these

criteria and evaluations; (vi) prepare a proposed plan for distribution of the proposed allocations; (vii) submit to the Court a report on the above, along with recommendations for the Court's consideration in proceeding with the allocation and distribution process following the Effective Date; (viii) engage such staff, deputies, and experts as reasonably necessary and conduct such hearings as may be necessary and appropriate to carry out this assignment, the Class Member disbursements, and the individual allocation or distribution of Class Counsel fees; (ix) engage in ex parte communications with the Court and parties as may be necessary and appropriate to carry out this assignment, the Class Member disbursements, and the individual allocation or distribution of Class Counsel fee; and (x) perform such other acts and functions as may be necessary or appropriate to fulfill the duties and responsibilities as set forth herein and in the Agreement, or as the Court may direct. Jacob Young's experience and qualifications are detailed in the affidavit attached as **Exhibit C** hereto.

5.

Order that Jacob Young, as Claims Administrator, shall be responsible for accepting and maintaining documents sent from Class Members, including Opt-Out Notices, Proof of Claim Forms, and other documents relating to claims administration and that the Claims Administrator may seek Court approval for reimbursement from the Settlement Fund for all fees and expenses incurred in connection with claims administration and the dissemination/publication of the Settlement Notice.

6.

Approve the form and manner of the Combined Class Certification Opt-Out and Settlement Notice to the Class (attached hereto in long form as **Exhibit D** and in short form as **Exhibit E**) and the plan for dissemination of the notice via direct mailing to all individuals who leased

3

residential property at The Willows apartment complex between January 1, 2014 and June 11, 2025, publication in The Times-Picayune/The New Orleans Advocate and The Louisiana Weekly, and publication of a website to include all reasonable notices and forms.

7.

Approve the Proof of Claim Form (attached hereto as **Exhibit F**) for all putative Class Members who leased residential property at The Willows apartment complex and sustained damages as a direct result of the living conditions at The Willows apartment complex at any time between January 1, 2014, and June 11, 2025, and the plan to make the Proof of Claim Form available to all such Class Members on a website dedicated to the Settlement and referenced in the approved notices.

8.

Appoint Cierra Rousseau-Dobard, Michael Dobard, Brittany Harris, Nicole Jones, Chelsi Nora, Beverly Williams, Adrianna Jackson, Amy Toledano, Erica Toledano, Elise Felix, Gladys Dedrick, Kimberly Delay, Jasmine Randall, Marvette Johnson, Leotis Johnson, Tashane Gordon, Tierra Slack, Winifred Boyd, Brittany Williams, the named Plaintiffs in this matter, as Class Representatives, and their attorneys, Jacob D. Young and Megan Kiefer, as Class Counsel based upon their qualifications as demonstrated in attached **Exhibit G**.

9.

Approve the proposed Preliminary Schedule as detailed in Section (V.) below.

### I.    FACTS AND BACKGROUND

This case involves a putative class action brought by current and former tenants against the owners and property managers of The Willows apartment complex for damages caused by the Defendants' alleged failure to provide adequate facilities. In their complaint, Plaintiffs allege that

they all signed the same or similar Lease Agreements that required Defendants to provide certain amenities and services such as the management, upkeep, repair, security and maintenance of The Willows. Plaintiffs further allege that Defendants breached the Lease Agreements and applicable laws and negligently subjected them to substandard living conditions, including water leaks, mold, rodent infestation, dilapidated and failing building structures, lack of maintenance, severe crime, lack of security, and lack of cleanliness. They also allege that Defendants failed to maintain fixtures, maintain safe and habitable conditions, and comply with applicable laws regarding sanitation, safety and fair housing. Plaintiffs further alleged that Defendants' failure to repair water leaks and damage led to mold growth throughout The Willows, and that Defendants failed to timely respond to these and other conditions after having adequate notice.

### A.    Plaintiffs' Claims and Defendants' Alleged Breach

Plaintiffs assert several theories of liability, including breach of contract for Defendants' failure to perform obligations under the lease, negligence, failure to exercise reasonable care resulting in vice, neglect and disrepair of the property, failure to exercise reasonable care resulting in ruin of the building, and unfair and/or deceptive trade practices. Plaintiffs sought monetary damages for loss of use, loss of enjoyment, contract damages, inconvenience, repair costs and property loss. In addition, Plaintiffs sought treble damages under Louisiana Revised Statute, Title 51, § 1401, *et seq*. and attorneys' fees and costs.

### B.    Procedural Background

The proposed Settlement was reached after a thorough investigation into and discovery of the legal and factual issues in this action. Class Counsel conducted extensive pre-suit investigation into the factual underpinnings of the practices challenged in this action, as well as the applicable

law. Ultimately, the Settlement is the result of many months of hard-fought litigation and negotiations.

On April 11, 2023, Plaintiffs commenced this class action against Defendants in the Civil District Court for the Parish of Orleans, State of Louisiana [ECF 1-1]. Plaintiffs alleged, individually and on behalf of all Class Members, that Defendants breached the terms of the Lease Agreements, violated Louisiana law and were negligent by failing to maintain The Willows in a habitable condition.

Defendants then removed the case to the Eastern District of Louisiana on April 28, 2023 [ECF 1] and filed an Answer on May 8, 2023 [ECF 1]. Plaintiffs amended their complaint on August 11, 2023 [ECF 21] and Defendants filed an amended answer on September 1, 2023 [ECF 24]. On August 16, 2023, the parties submitted a joint proposed scheduling order [ECF 22], and the Court has extended the deadlines on several occasions since entering its initial scheduling order [*see* ECF 23, 28, 41, 44].

From October 2023 through September 2024, the parties conducted extensive discovery, including extensive discovery. Class Counsel reviewed information and informal discovery to evaluate potential claims and defenses relating to Defendants. Plaintiffs received data and information concerning lessees with substantially similar Lease Agreements and habitability complaints. Plaintiffs filed a Motion to Compel Defendants to respond to certain discovery requests [ECF 34], which the Court granted on March 6, 2024 [ECF 39].

On Defendants' motion [ECF 45], the Court held a settlement/status conference on October 3, 2024 [ECF 47]. On December 17, 2024, following days long mediation with Robert Burns the Parties entered into a Confidential Stay Agreement and Memorandum of Understanding to allow for the sale of the subject property, a term of the Memorandum of Understanding, after which, the

contemplated settlement of all claims would be presented to the Court (**Exhibit A**). On December 19, 2024, the Parties filed a Joint Motion to Stay [ECF 48] to continue ongoing and productive settlement negotiations by exploring resolution of the matter to conserve the Parties' time and resources and promote judicial economy, which the Court granted on December 20, 2024 [ECF 49]. On August 12, 2025, the Parties agreed to additional settlement terms, with Defendants agreeing to contribute additional funds toward the settlement of claims arising between 2014 and 2018 (**Exhibit B**).

On July 17, 2025, the Court held a status conference where the parties discussed the status of their ongoing settlement negotiations [ECF 52], which have continued to be productive, resulting in the current proposed settlement now before the Court for preliminary approval.

The Parties have exchanged various drafts of the settlement documents until they reached final agreement on all the terms. The Parties also engaged in negotiations regarding the present Motion for Class Certification and Preliminary Approval and all attachments hereto, including the proposed Order, Claim Forms, and Notices. These negotiations were critical to ensure that Class Members receive effective notice, that they are adequately advised regarding the terms of the Settlement and their rights, and that they will be able to file claims with ease. The Parties further negotiated the content and format for proof of claim forms, the content of the long form and summary class notices, and the settlement administration protocol. The Settlement was fully executed by all parties on December 17, 2024 (**Exhibit A**). The only other agreement between Plaintiffs and/or Class Counsel and Defendants is the August 12, 2025 agreement (**Exhibit B**).

## II.      TERMS OF THE SETTLEMENT

### A.      The Settlement Class

The Settlement Class is comprised of all individuals who leased residential property at The Willows apartment complex located at 7001 Lawrence Road, New Orleans, Louisiana by entering into lease agreements regarding the same. The stipulated Settlement Class includes all individuals who leased residential property at The Willows apartment complex between January 1, 2014 and June 11, 2025, and sustained damages as a direct result of the living conditions at The Willows apartment complex.

As is explained in detail below, for the limited purpose of distributing the Settlement Funds, the Settlement Class is subdivided into "Settlement Class A" and "Settlement Class B."

For purposes of settlement distribution, Settlement Class A is limited to those members of the Settlement Class who leased residential property at The Willows apartment complex between January 1, 2014 and December 31, 2017.

For purposes of settlement distribution, Settlement Class B is limited to those members of the Settlement Class who leased residential property at The Willows apartment complex between January 1, 2018, and June 11, 2025.

### B.      Monetary Benefits

The Agreement provides that Defendants shall pay Settlement Class A Members a total of three million dollars ($3,000,000) in compensation representing a portion of rental reimbursement for rents paid by Settlement Class A Members between January 1, 2018 and June 11, 2025.

The Agreement further provides that Defendants shall pay Settlement Class B Members a total of one hundred fifty thousand dollars ($150,000) in compensation representing a portion of

rental reimbursement for rents paid Settlement Class B Members from January 1, 2014 to December 31, 2017.

The rental reimbursements shall be progressively applied based on the year of occupancy. This progression is supported by the facts of the case which demonstrate that conditions at the subject property deteriorated from 2014 to the eventual transfer of the property in June 2025. Thus, the percentage of reimbursement increases from Class B Member years (2014 to 2017) and Class A Member years (2018-2025). This includes progression from year to year within those class periods. The table(s) below contains the details of this progression:

2014-2017 Class B

| | | Total allocated to all claimants by year: | Per occupied unit (yearly)**: | Per month: |
|---|---|---|---|---|
| 2014 (17%) | 0.17 | $17,531.25 | $85.10 | $7.09 |
| 2015 (22.5%) | 0.225 | $23,203.13 | $112.64 | $9.39 |
| 2016 (27.5%) | 0.275 | $28,359.38 | $137.67 | $11.47 |
| 2017 (32.5%) | 0.325 | $33,515.63 | $162.70 | $13.56 |

The amount earmarked for Class B member rental reimbursements, following deductions, is $103,125.00.

9

2018 to June 11, 2025 Class A

| | | Total allocated to all claimants by year: | Per occupied unit (yearly)***: | Per month****: |
|---|---|---|---|---|
| 2018 (7.01%) | 0.07019574 | $147,191.69 | $714.52 | $59.54 |
| 2019 (8.42%) | 0.08426038 | $176,683.48 | $758.30 | $63.19 |
| 2020 (10.11%) | 0.10114525 | $212,088.95 | $902.51 | $75.21 |
| 2021 (12.13%) | 0.1213647 | $254,486.61 | $1,223.49 | $101.96 |
| 2022 (14.55%) | 0.14554928 | $305,198.65 | $1,919.49 | $159.96 |
| 2023 (17.47%) | 0.17474649 | $366,421.55 | $1,850.61 | $154.22 |
| 2024 (20.97%) | 0.20972045 | $439,757.57 | $2,134.75 | $177.90 |
| 2025 (1/1 - 6/11) (9.30%) | 0.09301772 | $195,046.53 | $946.83 | $176.43 |

The amount earmarked for Class A member rental reimbursement following deductions is $2,096,875.

**C.     Settlement Administration Expenses, Attorneys' Fees, Costs, and Plaintiffs Service Awards**

Defendants shall establish a non-reversionary Settlement Fund in the full and total amount of three million two hundred thousand dollars ($3,200,000) that provides payments to all Settlement Class Members, to include all members of Settlement Class A and Settlement Class B, and costs associated with settlement administration.  Three million dollars ($3,000,000) of the total Settlement Fund shall be allotted to the settlement of claims of Settlement Class A Members. One hundred fifty thousand dollars ($150,000) of the total Settlement Fund shall be allotted to the

settlement of claims of Settlement Class B Members.  Fifty thousand dollars ($50,000) of the total Settlement Fund shall be for the purpose of administration of the class settlement.

The Settlement Agreement does not contemplate, and Defendants have not agreed to provide additional funds for any other expenses, costs, attorneys' fees or plaintiffs' service awards. Any such sums for other expenses, costs, attorneys' fees or plaintiffs' service awards shall be distributed from the gross settlement amount of three million two hundred thousand dollars ($3,200,000), following court approval of the same. Class Counsel intends to petition the Court separately for the award of attorneys' fees and costs and service awards to the class representatives.

### D.    Class Notice and Claims Process

Defendant has agreed to bear the costs of providing notice and administration of the Settlement, including but not limited to processing Settlement Class Member claims and requests for exclusion up to fifty thousand ($50,000), which shall be included in the gross amount deposited into the non-reversionary Settlement Fund.

The Parties agree to multiple forms of Notice and a simple claims process. Because Defendants have the last known physical street address for all Settlement Class Members, Notice will be effected through direct, individual notice to Settlement Class Members. Direct notice will be provided within 90 days of the entry of a Preliminary Approval Order by the mailing Class Notice and Claim Form.

### III.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

In deciding whether to grant preliminary approval, courts must examine whether the class certification requirements of Fed. R. Civ. P. 23 are satisfied for settlement purposes. *See In re Chinese-Manufactured Drywall Products Liab. Litig.*, 424 F. Supp. 3d 456, 482 (E.D. La. 2020) (certifying settlement class and approving settlement agreement). These include numerosity,

11

commonality, typicality and adequacy. *See* Fed. R. Civ. P. 23(a). If the foregoing criteria are satisfied, for a class seeking money damages, the Court must then consider the following certification requirements: (1) predominance—"that questions of law or fact common to the members of the class predominate over any questions affecting only individual members"; and (2) superiority—"that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *See In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 482.

In applying the criteria for certification of a class action, "the court does not have the authority to conduct a preliminary inquiry into the merits of the case, and hence the substantive allegations contained in the complaint are accepted as true." *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 419 (S.D. Tex. 1999).

The proposed Settlement Class is defined as:

> All natural persons who leased and/or occupied the residential property pursuant to a lease at The Willows apartment complex between January 1, 2014, and June 11, 2025, and sustained damages as a direct result of the living conditions at The Willows apartment complex. Regardless of the number of individuals occupying a single unit at The Willows apartment complex, only one claim for rental reimbursement may be made per household by the individual whose name was on the lease as being responsible for rental payments or his/her representative. This is because only one rental payment was required to be paid during any given rental period, regardless of how many people occupied an apartment at one time. This class excludes Defendants, their affiliates, employees, officers and directors, and the Judge(s) assigned to this case.

Here, each of the requirements for certification of the proposed Settlement Class under Fed. R. Civ. P. 23 are satisfied for settlement purposes. Indeed, this Court has recently certified (although not for settlement purposes) a very similar class based on precisely the same certification criteria. *Hills v. Pac. Hous. Grp., LLC*, 2:23-CV-5740, 2025 WL 932538, at *27 (E.D. La. Mar. 26, 2025). The

Court should follow the same well-reasoned analysis and similarly grant class certification of the Settlement Class here.

### A.     The Class is Numerous Such that Joinder is Impracticable.

Numerosity for the purposes of Rule 23(a)(1) means that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "To satisfy the numerosity prong, a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." Pederson v. La. State Univ., 213 F.3d 858, 868 (5th Cir. 2000) (quotation omitted). "Although the number of members in a proposed class is not determinative of whether joinder is impracticable," the Fifth Circuit has held that a class with over 100 members "is within the range that generally satisfies the numerosity requirement." Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 624 (5th Cir. 1999) (citation omitted).

Here, the numerosity prong is satisfied because the proposed class exceeds 150 members. The Willows complex consists of approximately 19 buildings, containing 263 apartments. Data obtained from Defendants' tenant management documents shows that on average 206 between 2019 and 2023, approximately half of the class period: specifically, 233 units were occupied in 2019; 235 units were occupied in 2020; 208 units were occupied in 2021; 159 units were occupied in 2022; and 197 units were occupied in 2023. Even assuming no turnover in tenants during the class period, the putative class exceeds 200 members. Joinder of so many tenant claims would be impracticable. Even assuming no tenant turnover, the putative class would likely include over 500 individuals who were both lessees and residents, which is well within the range held to satisfy the numerosity requirement.

13

**B.      There are Questions of Law and Fact Common to the Class.**

Rule 23(a)(2)'s commonality prong requires that there be questions of law or fact common among the class members. Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, Plaintiffs must demonstrate that their claims depend on a common contention "of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Ahmad v. Old Republic Nat'l Title Ins. Co., 690 F.3d 698, 702 (5th Cir. 2012) (quotation omitted). "The test for commonality is not demanding and is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." Mullen, 186 F.3d at 625 (quotation omitted).

Here, all putative plaintiffs lived in the same apartment complex under the same owners and managers and all signed the same standard lease agreement. There are common questions of law and fact regarding the Defendants' obligations to provide safe, sanitary and habitable common and living areas, amenities, and services to tenants and the Defendants' alleged breach of these obligations. *See e.g.*, Johns v. Rozet, 141 F.R.D. 211, 216 (D.D.C. 1992) (finding commonality when there were common issues regarding "[t]he factual determination of the living conditions existing in the common areas of [the apartment complex], and [common] legal issues including whether there was a breach of warranty of habitability," among others). Moreover, Plaintiffs seek the return of rent as damages, as opposed to damages for any type of personal injury. Consequently, how each putative plaintiff experienced the deficiencies in the common and living areas, amenities, or services is irrelevant to the question of whether Defendants adequately discharged their alleged obligations regarding common and living areas, amenities, and services.

### C.    Plaintiff's Claims are Typical of the Class Claims.

Typicality under Rule 23(a)(3) means that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Like commonality, the test for typicality is not demanding." Mullen, 186 F.3d at 625. This prong "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 736 (5th Cir. 2023) (quotation omitted). "A complete identity of claims is not required; rather, the critical inquiry is whether the named plaintiff's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.* (quotation and alterations omitted).

Typicality is satisfied here. Plaintiffs assert a breach-of-contract claim, seeking a return of rental payments as damages for Defendants' alleged failure to maintain the common and living areas of the complex and provide the common services required under the standard lease agreement. Although each putative class member may have different feelings about or responses to the asserted deficiencies, the alleged breaches themselves are the same across the putative class and the damages sought can be determined in a formulaic manner. *See, e.g.,* Johns, 141 F.R.D. at 216 (finding typicality when class members' claims arose from the same conditions in the common areas of the apartment complex and were premised on the same legal theories, including breach of the warranty of habitability). Thus, the named plaintiffs' claims are typical of the class of lessee residents.

### D.    Plaintiff and Class Counsel are Adequate Representatives.

Rule 23(a) requires that "the class representatives. . . fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The purpose of the adequacy requirement is to

15

ensure the plaintiffs "suffer the same injury" as class members and identify whether they have interests antagonistic to the class. *In re Deepwater Horizon*, 785 F.3d at 1015. "The central component of class representative adequacy is the absence of conflicts of interest between the proposed representatives and the class." *In re Chinese-Manufactured Drywall,* 424 F. Supp. 3d at 482 (citation omitted). In contrast, "[a]dequacy of counsel asks whether the attorneys who seek to represent the class are competent to do the job." *Id.* (citation omitted). With regard to the former, a court must consider whether any proposed class representative has an interest "materially adverse to some of the class" and whether he or she "is properly qualified to assume the role of class representative." *Id.* (citation omitted). As to the latter requirement, "courts consider the competence and experience of Class Counsel, attributes which will most often be presumed in the absence of proof to the contrary." *Id.* (citation omitted).

Here, Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other Settlement Class Members whom they seek to represent. Moreover, they are committed to protecting the interests of the Class, as seen by their prosecution of the claim through the counsel they retained and engagement in the discovery process. *See Lehocky v. Tidel Techs*., Inc., 220 F.R.D. 491, 503 (S.D. Tex. 2004) (engaging in discovery and "selection of skilled counsel" are indicative of adequacy). Moreover, Plaintiffs' counsel is competent and experienced in complex litigation. See *Exhibit G*. Because Plaintiffs and Class Counsel will protect Settlement Class Members' interests, this Court should appoint Plaintiffs as Class Representatives and their counsel as Class Counsel.

### E. Common Issues Predominate over Individual Issues.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623

(1997). The question is not whether plaintiffs and class members will prevail, but rather "whether they will fail or succeed together." *Erica P. John Fund, Inc. v. Halliburton Co*., 718 F.3d 423, 431 (5th Cir. 2013) *vacated and remanded on other grounds*, 134 S. Ct. 2398 (2014). Predominance does not require all questions of law and fact to be common, but only that the common question(s) predominate over individual questions. *See Robinson v. Tex. Auto. Dealers Assoc.,* 387 F.3d 416, 421 (5th Cir. 2004). The Fifth Circuit—and others—have helpfully explained that the analysis is primarily a question of how a trial would be conducted, and whether the proof offered would apply class-wide or only to individual class members. *See, e.g., Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 218 (5th Cir. 2003) ("To decide whether common issues predominate, the district court must consider how a trial on the merits would be conducted if a class were certified."); *Brown v. Electrolux Home Prods., Inc*., 817 F. 3d 1225, 1234 (11th Cir. 2016) (courts should identify the elements of the parties' claims and then "classify these issues as common questions or individual questions by predicting how" the elements will be proved). If the addition or subtraction of class members would not significantly impact the quantity or substance of proof, courts can be confident that common issues predominate. *See Angell*, 67 F.4th at 739; *City of San Antonio v. Hotels.com*, No. SA-06-CA-381, 2008 U.S. Dist. LEXIS 58793, at *31 (W.D. Tex. May 27, 2008).

The superiority element of Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To conduct this inquiry, a court must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication," while considering whether a class action would be more manageable than alternatives, and how the manageability

concerns compare with the other advantages or disadvantages of a class action. *Earl v. Boeing Co.*, 339 F.R.D. 391, 2021 WL 4034514, at *39 (E.D. Tex. 2021) (quotations omitted).

Common questions of fact and law predominate over questions affecting individual members in this litigation and that proceeding as a class action is superior. Plaintiffs limit this action to negligence and breach of contract/warranty claims regarding common and living areas of the apartment complex and services owed in common to all putative class members. Defendants' alleged liability for the breaches is classwide, as is the determination of damages, whether it be a full or partial reimbursement of the rent the class members paid. Such damages are capable of measurement on a classwide basis by applying the proportion of recovery determined to be appropriate to the amount of rent paid by each class member and the duration of the substandard living conditions. Further, superiority is satisfied because the putative plaintiffs' losses are relatively small and requiring each individual claimant to bring his or her claims separately would waste limited resources, would increase the overall cost of litigation, may result in inconsistent outcomes, and would likely result in many claims being abandoned.

## IV.  THE AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE.

A class settlement may be effectuated only with court approval, after notice to the class, pursuant to Fed. R. Civ. P. 23(e). "First, the court must preliminarily approve the settlement. Then, the members of the class must be given notice of the proposed settlement, and finally, after a hearing, the court must determine whether the proposed settlement is fair, reasonable, and adequate." *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993). At the preliminary approval stage, "the settling parties bear the burden of demonstrating the settlement is fair, reasonable, and adequate." *Nelson v. Constant*, No. 17-14581, 2020 U.S. Dist. LEXIS 160726, at*9 (E.D. La. Sept. 2, 2020) (citation omitted).

However, "the standards for granting preliminary approval are not as stringent as those applied to a motion for final approval: The questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *Id.* at \*9 (citation omitted). Indeed, "[i]f the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *In re Pool Prods.*, 310 F.R.D. 300, 314–15 (E.D. La. 2015) (citations omitted).

This is because there is a "strong judicial policy favoring the resolution of disputes through settlement." *Smith v. Crystian*, 91 Fed. Appx. 952, 955 (5th Cir. 2004) (quoting *Parker v. Anderson*, 667 F. 2d 1204, 1209 (5th Cir. 1982)). The "public interest favoring settlement is especially apparent in the class action context where claims are complex and may involve a large number of parties, which otherwise could lead to years of protracted litigation and sky-rocket expenses." *Turner v. Murphy Oil USA, Inc.,* 472 F. Supp. 2d 830, 843 (E.D. La. 2007) (citation omitted).

To determine whether a settlement is fair, reasonable, and adequate, Rule 23(e) instructs courts to consider whether: (1) the class representatives and Class Counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award

19

of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (3) the proposal treats class members equitably relative to each other.[1]

In performing this analysis, courts in the Fifth Circuit consider the following factors: (1) the existence of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings; (4) plaintiffs' probability of success; (5) the range of possible recovery; and (6) the opinions of Class Counsel, class representatives, and absent class members. *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). Each of these factors support a finding that the class Agreement is fair, reasonable, and adequate.

### A.  Procedural Factors Favor Approval

First, Plaintiffs and their counsel adequately represented the class. The adequacy requirement mandates an inquiry into "the zeal and competence of the representative[s'] counsel and ... the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001). Plaintiffs (through counsel) engaged in extensive litigation and motion practice, serving discovery requests that elicited documents demonstrating the contours of the Settlement Class and Defendants' practices and procedures that were used to enter into the settlement agreement. Moreover, three of the named Plaintiffs, Cierra Rousseau-Dobard, Michael Dobard and Brittany Harris, were deposed and provided valuable testimony significantly advancing Plaintiffs' claims and advancing negotiation of the proposed settlement. Thus, Plaintiffs have been intimately involved with the litigation and strongly supports the Settlement. See *Exhibit G*.

---

[1] The first two "procedural" factors examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement," while the remaining "substantive" factors address "the terms of the proposed settlement." Fed. R. Civ. P. 23 Advisory Committee's Note.

Moreover, Class Counsel is particularly experienced in litigation, certification, trial and settlement of class action cases across the nation involving the exact same issues. *Id*. Class Counsel thoroughly investigated and analyzed Plaintiffs' claims and engaged in discovery, motion practice, data analysis and negotiation. *Id*. Thus, Class Counsel was able to accurately evaluate the strengths, weaknesses and value of the case, ultimately obtaining the Agreement that recovers the damages sought in the Complaint with $50,000 of the settlement administration expenses paid by the Defendant. *Id.*

Second, the Agreement was negotiated at arm's length between sophisticated counsel before an experienced mediator. *Id*.; *see also City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."). Moreover, prior to reaching the proposed settlement, the parties litigated the claims through discovery, negotiations, and mediation. *See Diaz v. Hillsborough Cnty. Hosp. Auth.,* 8:90-CV-120-T-25B, 2000 WL 1682918, at *6 (M.D. Fla. Aug. 7, 2000) (years of contested litigation prior to settlement demonstrates lack of collusion). The parties entered the proposed settlement agreement only "after a full-day mediation—which suggests the settlement was not the result of improper dealings." *Celeste Neely*, 4:21-CV-307-SDJ, 2022 WL 17736350, at *4 (E.D. Tex. Dec. 16, 2022) (quotation and citation omitted); *see* **Exhibit G**. This is critical because "[a] settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 MCLAUGHLIN ON CLASS ACTIONS § 6:7 (8th ed. 2011). Furthermore, there is no evidence of fraud or collusion. *See Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062, 2018 U.S. Dist. LEXIS 227456, at *33 (W.D. Tex. Aug. 20, 2018) ("The Court may . . . presume that no

21

fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary.").

### B.    Substantive Factors Favor Approval

First, the relief is adequate given the complexity, expense and likely duration of this litigation. This is a complex and hotly contest litigation—Defendants continue to deny any fault or wrongdoing to the Plaintiffs and Settlement Class Members. There is no guarantee that Plaintiffs and the Settlement Class Members will succeed at trial, let alone (if necessary) on appeal. *See Cole v. Collier*, 4:14-CV-1698, 2018 WL 2766028, at *4 (S.D. Tex. June 8, 2018) ("Absent settlement, the litigation would almost certainly have continued for years, with no assurance of as favorable a resolution. This factor weighs strongly in favor of approval of the Settlement.").

Moreover, should litigation continue, Plaintiffs and the Settlement Class Members will incur exorbitant costs going through class certification, expert discovery, dispositive motion practice, trial and (inevitably) post-trial appeal. Evidence and witnesses from across the country would have to be assembled for trial. For these reasons, Plaintiffs and Class Counsel appropriately determined a settlement outweighs the gamble and costs of further litigation. *See In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006) (noting that, even for straightforward claims, approval of settlement is favored where settlement "avoids the risks and burdens of potentially protracted litigation."); *see Hays v. Eaton Grp Attys., LLC*, No. 17-88-JWD-RLB, 2019 U.S. Dist. LEXIS 17029, at *25 (M.D. La. Feb. 4, 2019) (approving settlement where "Plaintiff is avoiding expense and delay and ensuring recovery for the Class."). Moreover, the immediate and considerable relief provided to the Settlement Class Members is more than adequate. *Hays,* 2019 U.S. Dist. LEXIS 17029, at *25 (approving settlement where it "makes monetary and injunctive relief available to Class members in a prompt and efficient manner.").

Second, the "method of processing class-member claims" is simple. A significant number of Class Members will not need to do anything in order to receive compensation.[2] For those Class Members who must complete a Proof of Claim form in order to receive compensation, the form requires only that they identify the dates when they leased an apartment at The Willows, the unit number and the type of damage they experienced. The form may be completed in electronic or written format. Under both forms of notice, Settlement Class Members must simply attest to the information and send the prefilled Claim form back. *See* **Exhibits D, E, and F**; *see also Wilson v. EverBank*, 14-CIV-22264, 2016 WL 457011, at *9 (S.D. Fla. Feb. 3, 2016) (finding significant that class members need not submit any additional evidence or documentation beyond merely "checking a box" which "should take no more than a few minutes for the average claimant to complete.").

Moreover, this type of settlement structure, where class members submit claim forms to make a claim for payment in the settlement process, is regularly approved by other courts. *See, e.g.*, *Gascho v. Global Fitness Holdings*, LLC, 822 F.3d 269, 282 (6th Cir. 2016) (affirming a claims-made class action settlement as fair and reasonable); *Bass v. Imperial Fire*, 1:22-cv-00550, 2025 U.S. Dist. LEXIS 158889 (W.D. La. Aug. 25, 2025); *Ictech-Bendeck v. Progressive Waste Sols. of LA, Inc.*, 2:18-cv-07889, (E.D. La. Jan. 1, 2025); *Sanchex v. Xavier Univ. of La.*, 2:23-cv-01269 (E.D. La. Apr. 15, 2025).

Third, the terms of the attorneys' fees award weigh in favor of approval of the Agreement. The proposed settlement provides that Class Counsel may apply for attorneys' fees and costs not to exceed seven hundred eighty-seven thousand, five hundred dollars ($787,500) (25% of the gross settlement amount) and costs not to exceed thirty-five thousand dollars ($35,000). This falls comfortably within the benchmark set for attorneys' fees in the Fifth Circuit. Indeed, it is typical

---

[2] Any Class Members who leased an apartment at The Willows apartment complex between January 1, 2014 and June 11, 2025 and receive Notice addressed to them via U.S. Mail need not complete a Proof of Claim Form.

that "common benefit fees between 32-percent and 37-percent have been awarded." *In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 497–98. The Fifth Circuit has approved of district courts' "use of the percentage method cross-checked with the *Johnson* factors." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012).[3]

Courts have long recognized the common fund doctrine, under which attorneys who create a recovery benefiting a group of people may be awarded their fees and costs from the recovery. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Lit.*, 727 F. Supp. 1201, 1203 (N.D. Ill. 1989). This doctrine also ensures that those who benefit from a lawsuit are not "unjustly enriched." *Van Gemert*, 444 U.S. at 478. The Fifth Circuit has directed that the fee be based upon a percentage of the class benefit so long as a *Johnson* cross check is performed. *Union Asset Mgmt.*, 669 F.3d at 644. Courts have significant discretion in choosing the proper percentage. *See Id.; See In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 498; *Di Giacomo v. Plains All Am. Pipeline*, CIV.A.H-99-4137, 2001 WL 34633373, at *13 (S.D. Tex. Dec. 19, 2001) (approving fees of 30% in class action settlement and noting the advantages of using the percentage method and that 20-

---

[3] The *Johnson* factors—intended to ensure "a reasonable fee"—are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717, 720 (5th Cir. 1974).

30% is typically the benchmark); *Regmund v. Talisman Energy USA, Inc.*, 4:16-CV-02960, 2021 U.S. Dist. LEXIS 92346 (S.D. Tex. May 12, 2021) (agreeing that exercising discretion to apply percentage-of-the-fund analysis was sensible, approving fees of 25%, and noting such percentage was "at the low end" of percentages typically approved within the Fifth Circuit).

Finally, Settlement Class Members are clearly treated equitably, in that they will receive the same Notice, the same claim process, are agreeing to precisely the same release, and are entitled to the similar benefits.

### C.   The Additional *Reed* Factors Favor Approval.

First, the state of the proceedings weighs in favor of approving the settlement. "This factor asks whether the parties have obtained sufficient information 'to evaluate the merits of the competing positions.'" *In re Educ. Testing*, 447 F. Supp. 2d at 620 (quoting *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)). "[T]he question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed. " *Id.* at 620–21. "[W]hen the settlement proponents have taken affirmative steps to gather data on the claims at issue, and the terms of the settlement or settlement negotiations are not patently unfair, the Court may rely on counsel's judgment that the information gathered was enough to support a settlement." *Id.* at 621.

As previously mentioned, Plaintiffs engaged in substantial discovery including written discovery and depositions, and review and analysis of thousands of documents. **Exhibit G**. Through these efforts, the Parties obtained sufficient information to make a reasoned determination on the desirability of settlement on the terms set forth in the Agreement. *Cf. Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (noting that class representatives can have sufficient information base even after a few months of litigation and even absent formal discovery).

Additionally, as discussed above, this case is subject to legitimate risk. "Litigation is inherently risky and full of impediments, even where a defendant 'all but admitted' and 'the plaintiffs had a strong chance of proving' liability." *Hays*, 2019 U.S. Dist. LEXIS 17029, at *25 (quoting *In re Educ. Testing Serv. Praxis*, 447 F. Supp. 2d at 620–21)). A trial in this case would invariably involve risks to Plaintiffs on the questions of liability and damages. *See Hays*, 2019 U.S. Dist. LEXIS 17029, at *25; *Singleton v. Elephant Ins. Co.*, 953 F.3d 334 (5th Cir. 2020); *Pieczonka v. Progressive Select Ins. Co.*, 840 Fed. Appx. 856 (6th Cir. 2021); *Sigler v. Geico Cas. Co.*, 967 F.3d 658 (7th Cir. 2020). Proceeding without a settlement would require tremendous time and resources to litigate dispositive motions, prevail at trial, and prevail again on appeal to the Fifth Circuit. *See Reed*, 703 F.2d at 172 ("A district court faced with a proposed settlement must compare its terms with the likely rewards the class would have received following a successful trial of the case.").

Finally, Class Counsel supports the proposed settlement, lending further support to approval of the Agreement. *See Celeste,* 2022 WL 17736350, at *7 (approving settlement after considering, *inter alia*, plaintiff's counsel opinion). The Fifth Circuit has held that "absent fraud, collusion, or the like," a court "should be hesitant to substitute its own judgment for that of counsel[.]" *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). "Class counsel's opinion should be presumed reasonable because they are in the best position to evaluate fairness due to an intimate familiarity with the lawsuit." *Bardales v. Fontana & Fontana, LLC*, No. CV 19-340, 2020 WL 5819873, at *9 (E.D. La. Sept. 30, 2020).

## V.      THE COURT SHOULD APPROVE NOTICE.

Under Rule 23(e)(1), in approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), courts must further ensure that class

26

members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified by reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). With respect to substance, notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the Notice proposed satisfies all applicable requirements of law and Constitutional Due Process. For convenience of Settlement Class Members, Defendants will extract available information from their property management records to mail notice to individuals who leased residential property at the Willows apartment complex from January 1, 2014, to present at their last known mailing address. All Notices will include a Proof of Claim form. A Long Form Notice posted to the Settlement Website (with information about the Settlement and relevant documents). In addition, Notice will be published in The Times-Picayune/The New Orleans Advocate and The Louisiana Weekly. These methods of providing Notice are more than reasonable. *See* In re Pool Prods., 310 F.R.D. at 318 (direct emailing of notice to those potential class members for whom the parties have a valid email address, along with publication of the notice in print and on the internet, satisfied the requirements of Rule 23(c)(2)(B) and due process); In re OCA, Inc. Securities and Derivative Litigation, Civ. A. No. 05-2165, 2008 U.S. Dist. LEXIS 84869, 2008 WL 4681369, at *16 (E.D. La. Oct. 17, 2008); *Herrell v. L & B Transp., LLC*, 3:24-cv-00965, 2025 U.S. Dist. LEXIS 166172 at *3 (M.D. La. Aug. 21, 2025) (notice provided to the settlement class, which included direct mailing via First-Class U.S. Mail and publication on the settlement website, was

the best notice practicable under the circumstances, complied with Rule 23 and the requirements of due process, where the claim form was straightforward and easily understandable); *see also Bardales, LLC*, No. CV 19-340, 2020 WL 5819873, at *9.

Moreover, the proposed notice includes (i) the nature of the action; (ii) the class definition; (iii) the class claims; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; (vii) the binding effect of a class judgment on members, (viii) a clear explanation of the terms of the Settlement, (iv) the amount sought in attorneys' fees and service award, and (v) informs Settlement Class Members of their right to object to seek exclusion and the method by which to do so. *See* **Exhibit D**.

Further, the Parties have selected and recommend Jacob Young as the Claims Administrator to handle the notices and all aspects of the settlement administration. The Claims Administrator's duties include, but not limited to: (i) overseeing the provision of Notice to the Class; (ii) overseeing identification of addresses for any returned mail, and remaining notice; (iii) processing Proof of Claim Forms; (iv) contacting Settlement Class Members, if any, whose Proof of Claim Forms are deficient to attempt to obtain a cured form; (v) processing any cured Proof of Claim Forms; (vi) sending all Proof of Claim Forms to Defendants or challenge and to Class Counsel; (vii) forwarding inquiries and questions to Class Counsel; (viii) providing a certification to the Court regarding the administration and processing of claims and, in the event that the Claims Administrator issues checks, issuing the payments to the Claimants as set forth herein; and (ix) establishing and maintaining a settlement website and call center. Accordingly, the proposed Notice is reasonably calculated and comports with all applicable law. For the convenience of the Court, below is a proposed preliminary schedule outlining the Parties' proposed deadlines

28

for execution of the above, which comports with the Schedule outlined in the proposed Order preliminarily approving of the proposed Settlement.

## PROPOSED PRELIMINARY SCHEDULE

| # | Action | Deadline |
|---|--------|----------|
| 1 | Deadline for Defendants to provide Claims Administrator with Settlement Class Member contact information | No later than 20 days from the date of this Order |
| 2 | Website Notice Posted by Claims Administrator | No later than 30 days from the date of this Order |
| 3 | Deadline for Claims Administrator to mail first Notice | No later than 30 days from the date of this Order |
| 4 | Deadline for Claims Administrator to send second Notice | No later than 15 days from the date the first Notice is sent |
| 5 | Deadline for Class Counsel to file the Motion for Attorneys' Fees, Costs, and Service Award | No later than 45 days before the deadline to file objections or opt-outs |
| 6 | Deadline for Settlement Class Members to opt-out of the Agreement | No later than 30 days prior to the Final Approval Hearing |
| 7 | Deadline for submission of Notice of Intent to object to agreement | No later than 30 days prior to the Final Approval Hearing |
| 8 | Deadline for Class Counsel to file their Motion for Final Approval of the Settlement | No later than 20 days before the Final Approval Hearing |
| 9 | Deadline for Claims Administrator to file proof of completion of Notice, along with complete and accurate list of Settlement Class Members requesting exclusion | No later than 10 days prior to the Final Approval Hearing |
| 10 | Final Approval Hearing | Month, Day Year, at Time [At least 90 days after the date that a Preliminary Approval Order is entered] |

| 11 | Deadline for Settlement Class Members to file claims | No later than 15 days after the Final Approval Hearing |
|----|------|------|

## CONCLUSION

Plaintiffs and Defendants respectfully request that the Court grant Certification of the class for settlement purposes only, preliminary approval of the Settlement, appointment of the Claims Administrator, approval of the form and manner of the combined class certification opt-out and settlement Notice, approval of the Proof of Claim form and Preliminary Schedule, and appointment of Class Representatives and Class Counsel.

*On behalf of the Class Plaintiffs*

*/s/Jacob D. Young*
JACOB D. YOUNG, (No. 34845)
Herman & Young
1100 Poydras St
Suite 1200
New Orleans, LA 70163
Telephone: (504) 581-7068
Facsimile: (504) 321-0576
jacob@hermanandyoung.com

*and*

*/s/Megan C. Kiefer*
MEGAN KIEFER (Bar No. 32882)
Kiefer & Kiefer
1100 Poydras St., Suite 1300
New Orleans, La. 70163
Telephone: (504) 828-3313
Telefax: (504) 828-0024
megan@kieferlaw.com

*On behalf of MOF-Preservation of Affordability Corp., MOF-Willows, LLC, PAC Housing Group, LLC, and GMF-Parc Fontaine, LLC*

*/s/Emily E. Eagan*
EMILY E. EAGAN (No. 29166)
Email:          eeagan@labordesiegel.com
NICHOLAS S. BERGERON (No. 37585)
Email:          nbergeron@labordesiegel.com
LABORDE SIEGEL, L.L.C.
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
Telephone:     (504) 561-0400
Facsimile:     (504) 561-1011

30

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 23, 2026, a true and correct copy of the foregoing was electronically filed with the Court's CM/ECF system and was thus served automatically upon all counsel of record in this matter.

*/s/ Jacob D. Young*