UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CIERRA ROUSSEAU-DOBARD, ET AL. | CIVIL ACTION |
| Plaintiffs | NO. 2:23-cv-01433 |
| *versus* | JUDGE BARRY W. ASHE |
| MOF-PRESERVATION OF AFFORDABILITY CORP., ET AL. | MAG. JUDGE DONNA PHILLIPS CURRAULT |
| Defendants | |

## DECLARATION OF JACOB D. YOUNG

1.      My name is Jacob D. Young. I am over the age of majority, provide this declaration voluntarily, and it is based on personal knowledge.

2.      I am a partner in the law firm Herman & Young and am one of counsel of record representing Plaintiffs in the above-styled lawsuit.

3.      This is a class action lawsuit on behalf of tenants of The Willows apartment complex located at 7001 Lawrence Rd., New Orleans, Louisiana (the "Willows") from 2014 to June 11, 2025 who suffered from substandard living conditions at the complex.

4.      Discovery has revealed that the 264 units at the Willows were occupied at rates as high as eighty-nine percent (89%) during the class period of Settlement Class A, with an average of 206 units (78% occupancy) being occupied from 2019 to 2023. The rental rates for this period ranged from $680 to $1,130 per unit.

5.      Deposition testimony, subpoena returns, and written discovery demonstrated that the conditions at the Willows were substandard and worsening from 2014 to 2025. Tenants experienced complete failures in both security upkeep and maintenance at the premises. The

Willows tenants suffered from an infestation of crime due to the lessor's failure to secure vacant apartments, upkeep gates, and maintain perimeter fencing. It was established that the premises at the Willows were rendered unsafe for those tenants who were frequently subjected to threats and crime while accessing their homes or within them. Frequently, people walked around the premises with firearms. Violence was common and the threat of violence was nearly constant. Deponents testified to instances of huddling with family on the floor as gunshots entered their apartment or being attacked while parking their car.

6.      Discovery established the deterioration of the units at the Willows. Tenants were subjected to mold growth, frequent leaks, ceiling collapse, buckling of walls, inoperable windows, inadequate cooling, and rampant pest infestation. Water regularly poured down walls. Stains were commonplace. Air conditioning was unreliable. The rat and roach infestation prevented the use of kitchens.

7.      Discovery similarly established that complex's common areas were ill-maintained. The common washers and dryers would not work. The washroom itself was often inundated with non-residents. The windows of the building were broken out. The

8.      The discovery establishing the Willow's condition included that obtained from third parties who either inspected premises at the Willows or performed work. Documents from several non-parties corroborated the discovery obtained from tenants and the Defendants themselves.

9.      It was established in the litigation that tenants made repeated requests to the management of the Willows to address the conditions enumerated here. The management, representatives of Defendants, not only failed to address the conditions but demonstrated hostility towards such complaints.

10. Discovery established that Defendants collected the full value of rental rates from the tenant occupants during these prolonged periods of substandard conditions. Defendants made no reductions correlating to the failure to provide acceptable and habitable conditions.

11. Document production established that the Defendants entered into form leases with the class member tenants which reflected identical terms with the exclusion of the unit bedroom number and rental rate.

12. Defendants' obligation for damages is established by both the subject contract(s) and applicable Louisiana law. In Louisiana, a lessor warrants peaceful possession to the lessee of an immovable. La. C.C. Art. 2700. Moreover, the lessor is obligated to maintain the premises in a condition suitable for the purpose of which it was leased. La. C.C. Art. 2682.

13. Additionally, Louisiana law provides that a lessor is bound to make all repairs that become necessary to maintain the premises in the conditions suitable. La. C.C. Art. 2691. Should the lessor fail to do so, the lessee is entitled to demand reimbursement for repairs. La. C.C. Art. 2694

14. Discovery in this litigation established competent evidence that Defendants failed in their duties as lessors. Thus, lessee class members are entitled to reimbursement.

15. The procedural background recounted in the Motion for Preliminary Approval is true and correct. The case was further complicated by the agreement that any resolution would require that the Defendants no longer possess or operate the subject property.

16. The Agreement was reached pursuant to arms-length negotiations without collusion. Specifically, the Parties participated in two mediations before an experienced mediator before the Agreement was reached. The negotiation process was rigorous and highly contested by sophisticated counsel, and conducted under the supervision of a neutral mediator, Robert Burns.

17.     In this action, Plaintiff sought to recover rental payments made to a common lessor under an unsettled legal theory previously unapplied to class action proceedings. This was a highly contested lawsuit relating to a controversial legal theory that to my knowledge is without precedent in the State of Louisiana.

18.     The proposed Agreement provides that Class Counsel may apply for, and Defendants will not oppose, attorneys' fees and costs not to exceed $787,500.00 (25% of the Cash Settlement Benefits). There were significant attorney hours expended in the prosecution of the plaintiffs' claims and significant hours are expected to be required in the future.

19.     Notably, Plaintiff and Class Counsel have expended significant costs—including retaining and paying experts, discovery costs, filing costs, mediation costs, and so forth, and have expended hundreds of hours of time, including reviewing voluminous documents, meeting with clients, researching statutory and case law, litigating motions, attending multiple mediations and settlement discussions, briefing Plaintiff's Motion for Preliminary Approval, appearing in court, attending depositions, and coordinating the collection and disbursement of extensive information to and from the putative class members and class representatives. Moreover, this litigation has included numerous complicated issues relating to the merits, preliminary approval of the Settlement Class, and novel issues of Louisiana law.

20.     There is no conflict of interest between the named Plaintiff and the members of the Settlement Class. To the contrary, their interests are perfectly aligned, as this Court found in granting Preliminary Approval.

21.     Plaintiffs have been an active participant throughout this litigation, including by: (a) gathering and providing documents to counsel to be produced to Defendants, (b) engaging in the presuit investigation process by submitting documents to counsel to review, meeting with

counsel to discuss various questions counsel had, (c) conferring with class counsel throughout the litigation, and (d) seeking to understand what "class actions" are and what it means to be a fiduciary and a class representative. Plaintiffs are further committed to representing the Settlement Class and ensuring their interests are protected to the best of their abilities.

22.   In entering into the Agreement, Plaintiff manifested her belief that the Agreement reached is beneficial to the Settlement Class.

23.   Moreover, class counsel is experienced in litigating class actions and complex litigation, including successfully litigating a class action with similar issues. Plaintiff and Class Counsel have adequately protected the interests of the Settlement Class.

24.   Plaintiff's counsel gained sufficient information about the strengths and weaknesses of the Plaintiffs' case to make a reasoned judgment about the desirability of settling the cases on the terms set forth in the Agreement. This included propounding substantial written discovery, reviewing thousands of pages of production documents, and retaining experts concerning the entitlement to and computation of class damages, and reviewing voluminous claims data produced in discovery.

25.   Through these efforts, Plaintiff has gained a complete understanding of all issues in this litigation.

26.   I, along with the rest of Class Counsel, believe that securing partial recovery of rental payments made to Defendants is an excellent result for the Settlement Class, particularly given the robust Notice and simple claims process agreed to, and separately paid by Defendants, and given the inherent risk of no recovery at all.

27.   Because Notice is robust and the claims process is simple, class members will be afforded every opportunity to submit a claim and receive payment.

28. Attorneys' fees and costs were not negotiated before the resolution of the class damages.

29. Between them, counsel for the Plaintiffs, as well as the members of their respective firms, have extensive and significant experience in class litigation, complex business litigation, appellate litigation, insurance litigation, and trials in numerous contexts, as well as experience litigating all over the State of Louisiana.

30. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

JACOB D. YOUNG,
*Attorney for Plaintiffs and Settlement Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CIERRA ROUSSEAU-DOBARD, ET AL.** | **CIVIL ACTION** |
| **Plaintiffs** | **NO. 2:23-cv-01433** |
| *versus* | **JUDGE BARRY W. ASHE** |
| **MOF-PRESERVATION OF AFFORDABILITY CORP., ET AL.** | **MAG. JUDGE DONNA PHILLIPS CURRAULT** |
| **Defendants** | |

## DECLARATION OF MEGAN C. KIEFER

1.      My name is Megan C. Kiefer. I am over the age of majority, provide this declaration voluntarily, and it is based on personal knowledge.

2.      I am a partner in the law firm Kiefer & Kiefer and am one of counsel of record representing Plaintiffs in the above-styled lawsuit.

3.      This is a class action lawsuit on behalf of tenants of The Willows apartment complex located at 7001 Lawrence Rd., New Orleans, Louisiana (the "Willows") from 2014 to June 11, 2025 who suffered from substandard living conditions at the complex.

4.      Discovery has revealed that the 264 units at the Willows were occupied at rates as high as eighty-nine percent (89%) during the class period of Settlement Class A, with an average of 206 units (78% occupancy) being occupied from 2019 to 2023. The rental rates for this period ranged from $680 to $1,130 per unit.

5.      Deposition testimony, subpoena returns, and written discovery demonstrated that the conditions at the Willows were substandard and worsening from 2014 to 2025. Tenants experienced complete failures in both security upkeep and maintenance at the premises. The

Willows tenants suffered from an infestation of crime due to the lessor's failure to secure vacant apartments, upkeep gates, and maintain perimeter fencing. It was established that the premises at the Willows were rendered unsafe for those tenants who were frequently subjected to threats and crime while accessing their homes or within them. Frequently, people walked around the premises with firearms. Violence was common and the threat of violence was nearly constant. Deponents testified to instances of huddling with family on the floor as gunshots entered their apartment or being attacked while parking their car.

6. Discovery established the deterioration of the units at the Willows. Tenants were subjected to mold growth, frequent leaks, ceiling collapse, buckling of walls, inoperable windows, inadequate cooling, and rampant pest infestation. Water regularly poured down walls. Stains were commonplace. Air conditioning was unreliable. The rat and roach infestation prevented the use of kitchens.

7. Discovery similarly established that complex's common areas were ill-maintained. The common washers and dryers would not work. The washroom itself was often inundated with non-residents. The windows of the building were broken out. The

8. The discovery establishing the Willow's condition included that obtained from third parties who either inspected premises at the Willows or performed work. Documents from several non-parties corroborated the discovery obtained from tenants and the Defendants themselves.

9. It was established in the litigation that tenants made repeated requests to the management of the Willows to address the conditions enumerated here. The management, representatives of Defendants, not only failed to address the conditions but demonstrated hostility towards such complaints.

10.     Discovery established that Defendants collected the full value of rental rates from the tenant occupants during these prolonged periods of substandard conditions. Defendants made no reductions correlating to the failure to provide acceptable and habitable conditions.

11.     Document production established that the Defendants entered into form leases with the class member tenants which reflected identical terms with the exclusion of the unit bedroom number and rental rate.

12.     Defendants' obligation for damages is established by both the subject contract(s) and applicable Louisiana law. In Louisiana, a lessor warrants peaceful possession to the lessee of an immovable. La. C.C. Art. 2700. Moreover, the lessor is obligated to maintain the premises in a condition suitable for the purpose of which it was leased. La. C.C. Art. 2682.

13.     Additionally, Louisiana law provides that a lessor is bound to make all repairs that become necessary to maintain the premises in the conditions suitable. La. C.C. Art. 2691. Should the lessor fail to do so, the lessee is entitled to demand reimbursement for repairs. La. C.C. Art. 2694

14.     Discovery in this litigation established competent evidence that Defendants failed in their duties as lessors. Thus, lessee class members are entitled to reimbursement.

15.     The procedural background recounted in the Motion for Preliminary Approval is true and correct. The case was further complicated by the agreement that any resolution would require that the Defendants no longer possess or operate the subject property.

16.     The Agreement was reached pursuant to arms-length negotiations without collusion. Specifically, the Parties participated in two mediations before an experienced mediator before the Agreement was reached. The negotiation process was rigorous and highly contested by sophisticated counsel, and conducted under the supervision of a neutral mediator, Robert Burns.

17.   In this action, Plaintiff sought to recover rental payments made to a common lessor under an unsettled legal theory previously unapplied to class action proceedings. This was a highly contested lawsuit relating to a controversial legal theory that to my knowledge is without precedent in the State of Louisiana.

18.   The proposed Agreement provides that Class Counsel may apply for, and Defendants will not oppose, attorneys' fees and costs not to exceed $787,500.00 (25% of the Cash Settlement Benefits). There were significant attorney hours expended in the prosecution of the plaintiffs' claims and significant hours are expected to be required in the future.

19.   Notably, Plaintiff and Class Counsel have expended significant costs—including retaining and paying experts, discovery costs, filing costs, mediation costs, and so forth, and have expended hundreds of hours of time, including reviewing voluminous documents, meeting with clients, researching statutory and case law, litigating motions, attending multiple mediations and settlement discussions, briefing Plaintiff's Motion for Preliminary Approval, appearing in court, attending depositions, and coordinating the collection and disbursement of extensive information to and from the putative class members and class representatives. Moreover, this litigation has included numerous complicated issues relating to the merits, preliminary approval of the Settlement Class, and novel issues of Louisiana law.

20.   There is no conflict of interest between the named Plaintiff and the members of the Settlement Class. To the contrary, their interests are perfectly aligned, as this Court found in granting Preliminary Approval.

21.   Plaintiffs have been an active participant throughout this litigation, including by: (a) gathering and providing documents to counsel to be produced to Defendants (b) engaging in the presuit investigation process by submitting documents to counsel to review, meeting to discuss

various questions counsel had, (c) conferring with class counsel throughout the litigation, and (d) seeking to understand what "class actions" are and what it means to be a fiduciary and a class representative. Plaintiffs are further committed to representing the Settlement Class and ensuring their interests are protected to the best of their abilities.

22.    In entering into the Agreement, Plaintiff manifested her belief that the Agreement reached is beneficial to the Settlement Class.

23.    Moreover, class counsel is experienced in litigating class actions and complex litigation, including successfully litigating a class action with similar issues. Plaintiff and Class Counsel have adequately protected the interests of the Settlement Class.

24.    Plaintiff's counsel gained sufficient information about the strengths and weaknesses of the Plaintiffs' case to make a reasoned judgment about the desirability of settling the cases on the terms set forth in the Agreement. This included propounding substantial written discovery, reviewing thousands of pages of production documents, and retaining experts concerning the entitlement to and computation of class damages, and reviewing voluminous claims data produced in discovery.

25.    Through these efforts, Plaintiff has gained a complete understanding of all issues in this litigation.

26.    I, along with the rest of Class Counsel, believe that securing partial recovery of rental payments made to Defendants is an excellent result for the Settlement Class, particularly given the robust Notice and simple claims process agreed to, and separately paid by Defendants, and given the inherent risk of no recovery at all.

27.    Because Notice is robust and the claims process is simple, class members will be afforded every opportunity to submit a claim and receive payment.

28.     Attorneys' fees and costs were not negotiated before the resolution of the class damages.

29.     Between them, counsel for the Plaintiffs, as well as the members of their respective firms, have extensive and significant experience in class litigation, complex business litigation, appellate litigation, insurance litigation, and trials in numerous contexts, as well as experience litigating all over the State of Louisiana.

30.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
MEGAN C. KIEFER
*Attorney for Plaintiffs and Settlement Class*